GLICKSTEIN, HUGH S., Associate Judge,
concurring specially.
I write to compliment the trial judge, whose disposition of this case, in my view, is a role model for similar cases.
*1362 Stephen L. Smith, appellant, was charged by information filed on April 5, 1988, with one count of racketeering (RICO), two counts of organized fraud, 122 counts of sale of unregistered securities and 122 counts of communications fraud. The information was dismissed and a new information was filed on October 18, 1988, charging appellant with one count of racketeering (RICO), two counts of organized fraud, and forty-eight counts each of grand theft, sale of unregistered securities, sale of securities by an unregistered dealer, securities fraud and communication fraud with a total of 243 counts.
Appellant had a sole proprietorship d/b/a SH Oil and Gas Exploration and was charged with selling investors interests in oil and gas wells and drilling projects which were either nonexistent or were not producing the level of revenues that appellant represented to investors. Appellant used funds received from investors to pay returns to other investors thereby inducing investors to continue to reinvest with his business allowing him to keep the business afloat.
On March 2, 1989, appellant entered a plea of guilty to forty-eight counts of sale of unregistered securities, forty-eight counts of sale of securities by an unregistered dealer and two counts of organized fraud. On May 3, 1989, the trial court sentenced him to three consecutive five-year terms of imprisonment on three counts of sale of securities by an unregistered dealer. In addition, it adjudicated all the remaining third-degree felonies with five years’ probation and the first-degree felonies with ten years’ probation, to run concurrent for a total of ten years’ probation consecutive to the fifteen-year prison term. It took judicial notice of other pending related actions, including a civil action filed in Polk County by the comptroller of the State of Florida wherein the defendant’s assets were placed in receivership on behalf of the investors, and including a Chapter 7 bankruptcy action filed by the defendant. The trial judge said:
This probation will have the standard conditions as set forth by the parole and probation authority, and it will contain additional special conditions which the Court will now articulate.
This Court is going to place several financial obligations on the defendant, which are all to be satisfied not less than 18 months within the probation period. The Court will require the restoration within 18 months of all claims associated with the counts pled to and adjudicated.
Each claim to be determined by parole or probation and to bear 12 percent interest, which is the lawful interest in the State of Florida, from the date of the investment. It being the Court’s intention that eventually the victims associated with these counts will receive their money back and 12 percent interest, which will put them in relatively the same position as they might have been in if they had invested' in a legitimate investment.
Each of these claims when settled will be done so with a bank certified check and will be personally delivered by the defendant to the victim under the supervision of a probation officer with an appropriate personal apology.
In respect to each count, the Court is going to assess $255 in court costs per count, and this is to be satisfied within 18 months.
The Court is going to require that all documented expenses incurred by law enforcement at any level associated with these charges as determined by probation will also be recouped by the taxpayers within 18 months.
The Court will require the defendant to make a one-hour lecture [sic] at each of the graduate level business schools associated with the State university system per year of his probation, a copy of the speech to be submitted to the Court in advance, the delivery to be on the subject of business ethics containing a review by the defendant himself of the particulars of the case — of these cases, and the Court requires him to identify himself in these proceedings as a convicted white-collar felon. He will appear at these lectures in shirt sleeves. It is not in the interest of the Court to have him appear *1363 as a successful businessman. This series of lectures will be repeated every year of probation.
The defendant will similarly give a lecture or presentation, one per year, for each high school in Polk County. And his lecture will be made to an assembly of either the 10th, 11th, or 12th grade as determined by the school authorities with their cooperation and assistance as scheduled by the probation officer and Mr. Smith.
And, again, the Court will receive a copy of his delivery so that I am satisfied that it is on the base of the subject matter the Court intends, again on the question of business ethics, identifying himself as a white-collar felon appearing in shirt sleeves.
The defendant will in addition perform 240 hours of community service for the first five years of the probation per year. This service will involve the defendant participating in programs related to persons below the poverty level accomplished at a rate of not less than 20 hours per month.
While on probation, the defendant will not operate any sole proprietorships or wholly owned corporate businesses. The defendant will not be employed in any consulting business or any business involving finances or fiduciary relationships.
During his period of probation, the defendant’s personal income will not rise above $30,000 a year, and this will be monitored by his probation officer. All other assets under his control will be directed toward the satisfaction of damages caused.
He will reside in no manner in any dwelling valued at over $50,000. He will participate in no financial transactions such as loans or mortgages, he will possess no bank accounts or credit cards, he will possess nor own no personal property or use personal property of a value of over $10,000 per item.
The defendant will not leave the State of Florida for more than 10 days without specific permission of the Court, he will not leave the United States at all, he will fully cooperate and truthfully answer all questions related to any investigations surrounding these or related matters in attempts by creditors or damaged individuals to satisfy their claim, he will disclose all holdings or to whom they may have been transferred since the beginning of the Comptroller’s investigation.
It should be apparent now what the Court meant when it said that some individuals prefer incarceration because it has been the Court’s intention, although these conditions must be reasonable, that Mr. Smith will find himself facing some considerable burden while on probation to meet these various and sundry obligations. And I do not make this as a casual or passing remark.
Mr. Smith, most of the people that I have seen in the criminal system in the 17 plus years that I have been on the bench have been individuals who have come from disadvantaged backgrounds. And in some respect, the community might have had some sympathy.
Without appearing to be excessively cruel on the question, I have some difficulty in finding what sympathy should be directed towards you in the matter. You obviously had the wherewithal and ability to have earned for yourself and your family a very comfortable livelihood and been able to have morally and legally remain [sic] a functioning, admired person of the community.
It is regrettable, indeed, that apparently money was more important than reputation. A good many people who find their way into the criminal system find their way here because in some regard they have no other choice, and there is a need. I find no need here.
I think, in fact, indeed, it is quite sad to see a person waste a life. You become today a multiple felon far beyond almost any other individual in the United States. In fact, the guidelines themselves that I have had reference to should you ever violate the law again, with 98 adjudicated felonies on your record, the guidelines sentence itself, as *1364 someone used the phrase, would go off the scale.
The Court has not mentioned yet, but I am going to at this time, mention the fact that I will allow the incarceration to be served concurrently with the Federal incarceration. It is my interest to cost the taxpayers of the State of Florida as little as possible further in this matter. To reduce your liberty for a period of time and then place you on a burdensome probation for the period of — for the purpose of you making the victims whole and doing what you might to assist the community and possibly other young people or other persons who might have the potential as you to understand that it is not a desired life.
There are people who are amoral about things, and I’m not sure whether or not you should be categorized in that vein or not. The name of the game is winning, and morality is not a question. It’s simply a case of whether you’re smarter than somebody else.
That’s not much of a code of ethics, and the Court’s intention when you make these speeches to these various groups, that you will make a conscientious effort to use your own situation as an example of what functioning without ethics can do to a person. We have for too long in our society embraced or sometimes referred to as situational ethics. Maybe this was your problem on this occasion.
[[Image here]]
Are there any questions, gentlemen, any objections, any additions, any remarks?
DEFENDANT SMITH: No sir.
MR. NEAL: None other than—
MR. MARS: None, your Honor.
MR. NEAL: Excuse me, your Honor. None other than imposition of sentence having taken place, the State would nolle prosse the balance of the counts outstanding in accordance with the pleas entered.
THE COURT: Anything from the defendant?
MR. TRIMBLE: That was the understanding, your Honor.